0473

Roy A. POWELL, Jr., Respondent, v. INSURANCE COMPANY
OF NORTH AMERICA, Appellant.

(330 S. E. (2d) 550)

Court of Appeals

*Edwin P. Martin,* of *Turner, Padget, Graham & Laney,
P.A.,* Columbia, *for appellant.*

*T. English McCutchen, III,* and *John R. Holland* of

*Whaley, McCutchen, Blanton & Rhodes*, Columbia, *for respondent.*

Heard Feb. 27, 1985.

Decided May 17, 1985.

GOOLSBY, Judge:

In this action to recover insurance benefits, the Insurance Company of North America (INA) appeals from an order refusing to direct a verdict in its favor and directing a verdict in favor of the respondent Roy A. Powell, Jr., in the amount of $6,410. INA also appeals from an order awarding Powell attorney fees in the amount of $2,115.30. We reverse the former and vacate the latter.

We need only address the issue of whether Powell had an insurable interest in property stolen from his father's home to support a contract of insurance.

In several discussions with her family, the last occurring in December, 1977, Powell's mother indicated she wanted her three sons to have upon her death certain items of silver owned by her. She wanted Powell to have several pieces matching his and his wife's flatware pattern.

Powell's mother died unexpectedly one month later. Her will bequeathed all her property to Powell's father.

In July, 1980, someone broke into Powell's father's home in Columbia and stole a quantity of silver worth between $60,000 and $70,000. The stolen articles included the silver Powell's mother wanted Powell to have. This silver, valued at $6,410, and all the other silver owned by Powell's mother were kept on display in his father's home after his mother's death until they were stolen approximately two and one-half years later.

Powell resided in Charleston at the time of the theft and was insured under a homeowner's policy issued by INA.

After the theft, Powell filed a claim with INA for the loss of several silver pieces taken from his father's home. INA refused to pay the claim. It contended Powell had no insurable interest in the items and that its policy therefore did not cover the loss. This action followed.

In this country, it is a rule of law that one cannot insure for his own benefit the property of another in

which he has no interest. Note, *Insurance: Insurable Interest in Oklahoma—Time for a Change,* 31 OKLA.L.REV. 718 (1978). Insurance law accepts as a settled rule that an insured must possess an interest of some kind in the subject matter of the policy. 44 C. J. S. *Insurance* Section 175 at 869 (1945). Regarding property insurance contracts in particular, if the insured has no interest in the property, he sustains no loss by the property's destruction. 4 J. & J. Appleman, *Insurance Law and Practice,* Section 2121 at 26 (1969). In order to recover on a policy of insurance, the insured must prove an insurable interest in the property both at the time the policy is issued and becomes effective and at the time of the loss. 43 Am.Jr.2d *Insurance* Section 944 at 969 (1982).

As to what constitutes an "insurable interest," our Supreme Court has given the following definition to the term:

"It may be said, generally, that any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction." 14 R.C.L. 910.

"An insurable interest in property is any right, benefit or advantage arising out of or dependent thereon, or any liability in respect thereof, or any relation to or concern therein of such a nature that it might be so affected by the contemplated peril as to directly damnify the insured." Joyce on Insurance (2d Ed.) Section 887.

*Crook v. Hartford Fire Insurance Co.,* 175 S. C. 42 at 48, 178 S. E. 254 at 257 (1934).

Powell testified that he had an insurable interest in several pieces of the stolen silver because they passed to him as a gift immediately upon the death of his mother. The testimony of Powell's father was to the same effect.

The law, however, is quite clear that a gift in order to be valid must operate *in praesenti.* If the alleged donee does not receive a present interest in the subject matter, but only one to take effect in the future, the gift is abortive and unenforcible. In addition, if the gift is not to go into effect until the death of the donor it is testamentary in character and void unless executed in

accordance with the statutes regulating the making of wills.

R. A. Brown, *The Law of Personal Property*, Section 48 at 131 (2d ed. 1955). Obviously, Powell did not acquire title by gift to any of his mother's silver upon her death.

Moreover, any right, benefit, or advantage Powell ■ possessed with respect to the silver simply ceased with the death of his mother since there is no evidence either that his mother bequeathed the silver to him or that his father made a gift of the silver. Powell's father and not Powell himself suffered the loss here.

The trial judge, therefore, erred in not directing a verdict in favor of INA. When the evidence is viewed, as it must be [*Skipper v. Hartley*, 242 S. C. 221, 130 S. E. (2d) 486, 13 A.L.R. 3d 426 (1963); *Mylin v. Allen-White Pontiac, Inc.*, 281 S. C. 174, 314 S. E. (2d) 354 (Ct. App. 1984)], in the light most favorable to Powell, the only reasonable conclusion to be drawn therefrom is that Powell had no insurable interest in any of the stolen silver.

Because INA was entitled to a directed verdict, we are required to vacate the award by the trial judge of attorney fees to Powell based on Section 38-9-320(1) of the South Carolina Code of Laws (1976). *See Nichols v. State Farm Mutual Automobile Insurance Co.*, 279 S. C. 336, 306 S. E. (2d) 616 (1983).

Reversed in part and vacated in part.

GARDNER and CURETON, JJ., concur.